
FILED
2016 Nov-28  PM 03:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATE DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

**CHRISTOPHER HESTER**      )
                            )
   **Plaintiff**      )
                            )
**v.**                      )
                            )
**UNIVERSITY OF**
**ALABAMA BIRMINGHAM**
**HOSPITAL**
                            )
                            )
   **Defendants**      )

## COMPLAINT AND JURY DEMAND

### I.    JURISDICTION

1.    This is a suit authorized and instituted pursuant to the Act of Congress known as Title VII of the Civil Rights Act of 1964, As Amended.

2.    Plaintiff, Christopher Hester, ("Hester" or "Plaintiff"),  is an individual who seeks declaratory, injunctive, back pay, compensatory and punitive damages, and other relief to redress deprivation by Defendant of his right to be free of discriminatory employment practices.

3.    The discriminatory employment actions complained of herein were committed, and are being committed, within the State of Alabama.

## II.     ADMINISTRATIVE EXHAUSTION

4.      Plaintiff Hester filed a Charge of Discrimination (420-2016-01761) with the

Equal Employment Opportunity Commission (hereinafter "EEOC") within

180days of the last discriminatory act.  See Attached

5.      On August 30, 2016, the EEOC issued a "Dismissal and Notice of Rights" to

Hester and Hester files this lawsuit less than ninety (90) days after receiving his

Notice of Right to Sue.

## III.   PARTIES

6.      Plaintiff, Christopher Hester is an African-American citizen of the United

States over the age of 18 and a resident of the State of Alabama.

7.      Defendant, University of Alabama-Birmingham Hospital ("UAB" or

"Hospital") is an entity subject to suit under Title VII of the Civil Rights Act of

1964.

## IV. FACTS

8.      In 2010, Hester became a hospital employee as a Patient Tech care

representative in the psychiatric unit.

9.      In 2015, Hester was terminated from his employment arising out of a

confrontation with psychiatric patient.

10.    Working in direct patient contact in the psychiatric ward is particularly challenging as the clients can have physical and emotional disabilities.  Hester's tenure in the job speaks to his commitment to the patients he served and the hospital which employed him.

11.    In certain instances, the job was not without physical and safety risk to Hester and all psychiatric staff given the nature of the medical problems in the population group cared for by Hester.

12.    In November 2015, Hester was terminated after a confrontation with a heavy set psychiatric patient in a noncompliant state.

13.    Hester had to restrain this patient.

14.    Hester was injured and reported the incident to his supervisor.  Following the incident, Hester continued to care for the patient in question.  A few weeks after the incident Hester was terminated.

15.    The hospital alleged that Hester did not act in accordance with his training and identified a conflict between Hester's written report and a video tape of the encounter.

16.    Hester has wide range of experience in serving psychiatric patients.

17.    Hester, without any disciplinary history, was summarily terminated.

18.    Hester is aware that white Patient Care Tech employees have restrained

patients, including administering choke holds, without being subject to strict

scrutiny regarding the video tape v. the written statement, much less terminated for

failing to follow procedures when restraining the patient.

19.    Hester was informed that the better course of action was to flee from the

patient.

20.    Running away from the patient was not an option to Hester who was present

and cared for this patient.  Instead, Hester was subjected to an after the fact

analysis of how to handle a disruptive patient encounter from the safety of an

office setting- post conflict without the patient present.

21.    Hester had been employed for five years with no charges, suggestions or

allegations of any patient abuse.

22.    Throughout his employment, Hester had physical contact with a number of

psychiatric patients and has zero interest in escalating any situation.

23.  Post-termination, Hester has been approached and informed by current and/or

former hospital employees and informed that these patient encounters have

occurred before and that the white patient tech care representatives do not lose

their jobs without warning.

24.    Hester lost his job, suffered mental and/or emotional distress as well as loss of pay.

## IV.    COUNT I

## A.  RACE DISCRIMINATION IN EMPLOYMENT

25.    The Defendant UAB Hospital discriminated against Hester because of his race with respect to his termination in violation of Title VII.

26.     UAB Hospital's treatment of Hester also violates 42 U.S.C.A. § 2000e-2(m), "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."

27.     White employees such as Daniel Nash are not subjected to investigation, accused of not following procedures, or terminated for patient encounters where physical force was used in a patient encounter.

28.     White employees were not informed they should flee from encounters with patients who acted out or refused to respond to any instructions.

29.     Hester was held to a higher standard of employment than the white patient tech care representatives.

30.     Hester suffered loss of pay and benefits. Furthermore, as a result of the treatment he received from his former employer, Hester suffered mental anguish, humiliation, embarrassment.

31.     The Defendant's discriminatory actions toward Hester were reckless, malicious, and willful and in violation of Hester's statutory rights pursuant to Title VII of the Civil Rights Act of 1964, as amended.  The hospital applies a different level of scrutiny to the African-Americans employees in violation of Title VII. Whereas a white employee may receive a write-up for an alleged infraction, the African-American employee is terminated.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that this Court:

1.     Issue a declaratory judgment that the Defendant's acts, policies, practices, and procedures complained of herein have violated and continue to violate the rights of the Plaintiff, et seq., Title VII of the Civil Rights Act of 1964, As Amended.

2.     Grant the Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the defendant and at the defendant's request from continuing to violate the Plaintiff's rights.

3.      Enter an Order to make the Plaintiff whole by granting him

appropriate declaratory and injunctive relief, and back-pay, (plus interest), as well

as nominal and/or compensatory, punitive damages, liquidated damages, and other

benefits of employment.

4.      The Plaintiff further prays for such other relief and benefits as the

cause of justice may require, including but not limited to, an award of costs,

attorney's fees and expenses.

## JURY DEMAND

### A TRIAL JURY DEMANDED ON ALL CLAIMS

Respectfully submitted,

s/Lee Winston
Lee Winston
Roderick T. Cooks
Attorneys for the
Plaintiff

**OF COUNSEL:**
WINSTON COOKS, LLC
2 North 20th Street
Birmingham, AL 35203
Tel:  (205)502-0970
Fax: (205)251-0231